UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JRS PHARMA, LP,

              Plaintiff,

v.                           Case No. 7:25-cv-10647

IMCD PUERTO RICO, INC.,         Hon.

              Defendant.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, JRS Pharma, LP, for its Complaint against Defendant IMCD Puerto Rico, Inc. (IMCD) alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff JRS Pharma, LP ("JRS") brings this Complaint for Declaratory Judgment pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202 seeking a declaration that a termination of its relationship with Defendant is just and proper.

2.      Defendant IMCD has asserted that any termination by JRS will violate Puerto Rico's Dealers' Contract Act, 10 L.P.R.A. §§ 278 *et seq.,* commonly known as "Law 75".

3.      Law 75 governs the business relationship between suppliers/principles and distributors/dealers appointed for marketing their products. See *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 101 F. Supp. 2d 236, 240 (S.D.N.Y. 2000), *aff'd,* 24 F. App'x 16 (2d Cir. 2001)

4.      Puerto Rico legislators passed Law 75 to provide that "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any

act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." *Id.*

5.    Law 75 is "not intended to extend unworkable relationships, but only to prevent arbitrary terminations." *R.W. Int'l Corp v. Welch Food, Inc.,* 13 F.3d 478, 485 (1st Cir. 1994).[1]

6.    There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to Law 75 related to the termination of their relationship.

7.    A judicial declaration is necessary and appropriate at this time so that JRS may ascertain its rights and duties with respect to the termination of its relationship with IMCD.

## PARTIES

8.    Plaintiff JRS is a Delaware corporation with its principal place of business at 2981 Route 22, Patterson, New York 12563.

9.    JRS is a leading manufacturer of excipients in the global health science industry. Plaintiff's portfolio includes binders, disintegrants, lubricants, and, and other functional excipients. Plaintiff also offers technical support and biopharma services to address their customers' formulation challenges.

10.    Defendant IMCD is a Puerto Rico corporation that is part of the IMCD Group, a global conglomerate with affiliates around the world. IMCD Group, which includes IMCD, states on its website that it is a distributor that helps suppliers simplify and grow their business operations through local networks, market intelligence and technical expertise.

---

[1] Federal courts sitting in New York may look to First Circuit decisions when analyzing Law 75, because the First Circuit, which reviews the decisions of the Puerto Rico district court, necessarily has great familiarity with Law 75. See *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,* 101 F. Supp. 2d 236, 240 (S.D.N.Y. 2000), *aff'd,* 24 F. App'x 16 (2d Cir. 2001).

11.     IMCD Group conducts business globally including in Puerto Rico through IMCD.

## JURISDICTION AND VENUE

12.     Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the acts and events giving rise to the Complaint occurred or will occur in this District. Specifically, JRS is located in and conducted negotiations and communications with IMCD and directed its course of dealings with IMCD from this District in New York.

14.     This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201, 2202

15.     The Court may, and indeed should here, order a speedy hearing of this declaratory judgment action.

## STATEMENT OF FACTS

16.     JRS and IMCD (together the "Parties") have a relationship built through oral communications and a course of dealings in which JRS expected IMCD to act as JRS's distributor in Puerto Rico.

17.     JRS and IMCD's business relationship commenced in August 2023 when IMCD acquired JRS's previous distributor in Puerto Rico.

18.     IMCD, however, has failed to act as JRS's distributor in Puerto Rico, prompting JRS to seek to terminate their relationship on March 27, 2025.

3

19.     JRS has not yet terminated its relationship with IMCD. JRS is instead seeking a declaratory judgment from the Court affirming its right to properly and legally terminate the relationship over IMCD's opposition.

**IMCD, with its global presence and broad collection of representative clients, created irreconcilable conflicts by purchasing the two distributors JRS previously had a principal/distributor relationship with.**

20.     Before JRS started its business relationship with IMCD, JRS had a principal/distributor relationship with Mutchler of Puerto Rico, Inc. ("Mutchler") until the summer of 2026.

21.     IMCD acquired Mutchler in July 2016, creating a conflict of interest between JRS and IMCD.

22.     IMCD's acquisition of Mutchler significantly altered the competitive landscape and created inherent conflicts. This is because IMCD gained the ability to (1) prioritize competing product lines over JRS's products and (2) force JRS to compete against products that IMCD chooses to promote within the Puerto Rican market.

23.     IMCD recognized the inherent conflict of interest and, itself, terminated its relationship with JRS.

24.     JRS replaced Mutchler by engaging Sachs Chemical, Inc ("Sachs") to be its distributor in Puerto Rico in or around March of 2017.

25.     IMCD acquired Sachs in August 2023, creating a virtually identical situation as was present in July 2016 in which IMCD and JRS had a conflict of interest.

26.     IMCD adopted the business from Sachs "as is" and, like Sachs, has failed to develop any business resulting in a continued erosion of JRS profits.

27.     IMCD's purchase of Sachs and the resulting conflict of interest between the Parties diluted JRS's business portfolio in Puerto Rico.

28.     Since IMCD purchased Sachs, IMCD has the ability to shift its focus away from JRS's products and growth and focus on promoting the products of suppliers directly competing with JRS in Puerto Rico.

29.     Indeed, since acquiring Sachs, IMCD has not developed any business in Puerto Rico on behalf of JRS.

30.     IMCD's actions have emphasized the now inherent conflict of interest between IMCD and JRS.

31.     IMCD's efforts to control the distribution market and require JRS to only use it in Puerto Rico is an illegal exercise of market control.

**IMCD fails to act as JRS Pharma's distributor**

32.     JRS's business in Puerto Rico has been initiated and managed by JRS's Global Accounts Team with local execution in Puerto Rico by JRS's customers' representatives.

33.     Essentially, JRS's business in Puerto Rico exists despite IMCD's relationship with JRS.

34.     JRS's Global Accounts Team directly contacts JRS's local customers' representatives calling into question the purpose of JRS's business relationship with IMCD.

35.     Furthermore, IMCD has failed to undertake meaningful market development activities in Puerto Rico on JRS's behalf.

36.     IMCD has failed to engage in any marketing campaigns, industry seminars, or relevant trade channels to promote JRS's products in the market.

37.     All key volumes that IMCD currently manages are handover business from JRS due to JRS customers' request to source from local stock and/or to receive the tax benefits from sourcing from a Puerto Rican-owned entity.

38.     IMCD has not developed new business on JRS's behalf.

39.     Due to IMCD's failure to act on JRS's behalf in a meaningful way, JRS's performance in terms of territory growth and customer engagement has not met expectations.

40.     Indeed, JRS's sales figures have not meaningfully grown since JRS started its business relationship with IMCD in August 2023. JRS's sales figures have actually remained stagnant.

41.     Fundamentally, IMCD has failed to act as JRS's distributor.

42.      Instead of acting as JRS's distributor, IMCD has acted as a mere delivery service, delivering JRS's products to JRS's pre-built customer base.

43.     A traditional distributor buys inventory in a quantity for which they get a discount, and then sells that inventory to the supplier's customers. IMCD has never done this for JRS.

44.     For over two years, IMCD has predominantly used "just-in-time" deliveries to JRS's customers in Puerto Rico, rather than maintaining a local inventory in Puerto Rico as distributors are required to do.

45.     When IMCD receives an order from one of JRS's customers, IMCD places a rush order for those specific products with JRS. IMCD then receives that order and delivers it to JRS's customer or has it shipped directly to the customer.

46.     IMCD receives a discount from JRS on JRS's established global pricing and receives a 10% margin of JRS's profit from selling the product.

47.     By paying IMCD to act as JRS's delivery service in Puerto Rico, JRS is forced to lose margin on customer pricing without receiving any benefit to justify the expense.

48.     Additionally, since IMCD acquired Mutchler and Sachs, IMCD lost its minority business status, which is an important factor JRS considers when doing business with companies in Puerto Rico. This has contributed to further strategic and business misalignment between the Parties.

49.     IMCD never consulted or informed JRS when it acquired Sachs.

50.     However, the conflict-of-interest IMCD created between the Parties by purchasing Sachs is virtually the same conflict of interest IMCD created between the Parties when it acquired Mutchler.

51.     IMCD considered the conflict of interest it created between the Parties by the Mutchler acquisition to be irreconcilable.

52.     Likewise, the conflict of interest caused between the Parties by the Sachs acquisition is also irreconcilable and JRS has "just cause" under Law 75, if needed, to terminate its relationship with IMCD.

**JRS Pharmaceuticals informs IMCD of JRS Pharmaceutical's intention to terminate their relationship for "just cause" due to IMCD's conflict of interest and poor performance.**

53.     On March 27, 2025, JRS sent IMCD "Transition Notification" indicating JRS's intent to transition its business relationship to another entity in Puerto Rico.

54.     On July 8, 2025, IMCD sent JRS a letter stating IMCD rejects any attempt by JRS to terminate their relationship without "just cause" under Law 75 and made the following four demands:

A.     JRS's customers be notified, not on July _, [sic] 2025, but at a mutually agreeable time to be determined by the Parties of the termination of JRS and IMCD's relationship.

B.     IMCD's period to purchase from JRS would be extended until December of 2025.

C.    IMCD's inventory would not be bought back by JRS but rather IMCD would be allowed to deplete its inventory in its normal course of business.

D.    JRS does not engage with any distributors for IMCD's relevant market, but rather directly sell to customers.

*See* **Exhibit 1.**

55.    IMCD's third demand, that JRS not buy back IMCD's inventory, is strange considering IMCD does not hold inventory of JRS's products but rather generally places rush orders of JRS's product for delivery to JRS's customers.

56.    IMCD's fourth demand, that JRS not engage with any distributors for IMCD's relevant market, but rather directly sell to customers, is also strange because there is no non-competition or exclusivity contract between the Parties.

57.    In response to this July 8, 2025 letter, JRS specifically outlined the numerous and essential ways in which IMCD has failed to act as JRS's distributor. **Exhibit 2,** August 7, 2025 Letter.

58.    In this August 7, 2025 letter, JRS also rejected IMCD's fourth demand, in which IMCD states they wish to prohibit JRS from engaging with other companies in Puerto Rico even though a non-competition or exclusivity contract does not exist between the Parties.

59.    JRS made clear that it retains the right to pursue its business interests independently and in the best interest of its customers.

60.    IMCD responded on September 10, 2025, stating JRS may engage with other distributors in Puerto Rico if JRS agrees to compensate IMCD for its "estimated loss of sales of the JRS products," which IMCD valued at approximately $3,056,000. IMCD demanded, however, that even if JRS paid this amount, JRS would still be required to (1) extend IMCD's

8

period to purchase from JRS to December 2025, (2) JRS would buy back inventory from IMCD, and (3) JRS would delay notifying its customers of any termination. **Exhibit 3**, IMCD's September 10, 2025, Letter.

61.     IMCD's demand for $3,056,000 is incredulous, as this number is much more than IMCD's usual average one-year gross margin.

62.     On September 19, 2025, JRS requested IMCD to (1) provide an itemized list of how the $3,056,000 was calculated; (2) provide a substantive response to why JRS does or does not have "just cause" to terminate their course of dealings with IMCD; and (3) specify how long IMCD wanted JRS to not engage with other distributors in Puerto Rico despite the nonexistence of a non-competition or exclusivity contract. **Exhibit 4, pp. 5-6,** September 19, 2025 Email.

63.     On October 13, 2025, IMCD responded, stating (1) $3,056,000 included legal fees, the Sachs acquisition, stock, earnings, and warehouse investments; (2) IMCD will not provide a substantive response to why JRS does or does not have "just cause" to terminate their course of dealings with Defendants; and (3) JRS cannot engage with other distributors in Puerto Rico as long as the Parties are engaging in negotiation. **Exhibit 4, pp. 3-4,** October 13, 2025 Email.

64.     On October 20, 2025, IMCD told JRS that JRS could not directly communicate with its own customers without IMCD present. **Exhibit 4, p.2,** October 20, 2025, Email.

65.     IMCD did the same on December 3, 2025, again telling JRS that JRS could not meet with its own customers without IMCD present, despite IMCD's lack of involvement in developing any of JRS's clients in Puerto Rico. **Exhibit 4, p.1,** December 3, 2025 Email**.**

66.     JRS cannot run a business in Puerto Rico if it is required to continue its business relationship with IMCD or is prohibited from engaging with actual distributors or even its own clients.

67.     JRS therefore desires to terminate its relationship with IMCD.

68.     IMCD, however, refuses to acknowledge that (1) through its course of dealings with JRS, IMCD has not acted as JRS's dealer or distributor in Puerto Rico, (2) the inherent conflict that exists with IMCD representing JRS's competitors and (2) even if IMCD was JRS' dealer or distributor, JRS has "just cause" to terminate their business relationship.

69.     JRS therefore seeks a declaratory judgment from this Court.

## COUNT I – DECLARATORY JUDGMENT
## (IMCD IS NOT A DEALER UNDER LAW 75)

70.     JRS re-alleges the allegations in this Complaint as though set forth fully herein.

71.     An actual controversy now exists between JRS and IMCD and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the Parties and to grant such further and other relief as may be necessary.

72.     An actual justiciable controversy exists because the Parties dispute whether IMCD qualifies as a "dealer" under Law 75. A judicial determination of this issue is necessary to clarify the rights and obligations of the Parties.

73.     A "dealer" under Law 75 is one who has a "level of control over the distribution of the supplier's products in Puerto Rico." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 4 (1st Cir. 1999).

74.     The dealer must have "something beyond mere contact with the product as it moves down the chain from manufacturer to supplier[.]" *Id.* (internal citation removed)

75.     A dealer is "an independent entrepreneur who has established a continuing relationship, either fixed or in`determinate, with another principal for the distribution of a product or service … geared to create, develop, and coordinate a market and to obtain new clients." *Id.*

76.     A dealer must (1) promote product, (2) keep inventory, (3) fix prices, (4) have delivery and billing responsibilities, (5) have authority to extend credit, (6) do advertising campaigns, (7) assume risk, (8) purchase product, (7) maintain facilities, and (8) offer product-related services to clients. *Id.*

77.     IMCD has not had anything beyond mere contact with JRS's product in the Puerto Rican market.

78.     JRS has cultivated its own entire customer base and business presence in Puerto Rico without help or input from IMCD. IMCD simply places rush orders for JRS's products when JRS's customers desire to place an order, and then IMCD delivers that product to JRS's customers or has it directly shipped to the customer.

79.     IMCD is not an independent entrepreneur that has established a relationship with a principal or supplier for the distribution of the supplier's products geared to create, develop, and coordinate a market and to obtain new clients.

80.     IMCD has not created, developed, or coordinated a market on JRS's behalf to obtain new clients for JRS.

81.     IMCD has not promoted JRS's products, has not maintained any significant inventory of JRS' products, has not fixed prices for JRS's products, has not handled billing responsibilities on JRS's behalf, does not have the authority to extend credit, has not conducted advertising campaigns, does not assume any risk on behalf of JRS, does not maintain facilities on behalf of JRS, and does not offer any product-related services to JRS's customers.

82.    IMCD is not JRS's dealer under Law 75.

WHEREFORE, JRS respectfully requests this Honorable Court to (1) declare IMCD is not a "dealer" within the meaning of Puerto Rico's Law 75, 10 L.P.R.A. §§ 278 et seq; (2) declare that Law 75 does not apply to the Parties' relationship; (3) award JRS its costs and reasonable attorneys' fees as permitted by law; and (4) grant any such relief as this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT
## (JRS CAN DIRECTLY CONTACT ITS CUSTOMERS AND DISTRIBUTORS WITHOUT IMCD)

83.    JRS re-alleges the allegations in this Complaint as though set forth fully herein.

84.    An actual controversy exists between JRS and IMCD and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the Parties and to grant such further and other relief as may be necessary.

85.    An actual justiciable controversy exists because the Parties dispute whether JRS can contact its customers and contact distributors without IMCD present. A judicial determination of this issue is necessary to clarify the rights and obligations of the Parties.

86.    Law 75 does not recognize constructive termination of a dealer. Law 75 only deals with actual or de facto termination. See *Casco, Inc. v. John Deere Constr. & Forestry Co.*, 990 F.3d 1, 12 (1st Cir. 2021).

87.    When a supplier ceases dealing with a distributor completely for several months, there is an actual termination under Law 75. *See id.*

88.    JRS has not ceased dealing with IMCD completely for several months.

89. By conducting business with its own customers or conducting business with distributors, JRS has not actually terminated its relationship with IMCD without "just cause."

90. Law 75 therefore does not apply and JRS is able to contact its customers and contact distributors without IMCD's presence, despite IMCD's protestations.

WHEREFORE, JRS respectfully requests this Honorable Court to (1) declare JRS may directly contact and conduct business with its customers without IMCD's involvement or presence; (2) declare that such direct contact does not constitute termination under Law 75, 10 L.P.R.A. §§ 278 et seq and does not violate IMCD's rights; (3) award JRS its costs and reasonable attorneys' fees as permitted by law; and (3) grant any such relief as this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
## ("JUST CAUSE" EXISTS FOR JRS TO TERMINATE ITS RELATIONSHIP WITH IMCD)

91. JRS re-alleges the allegations in this Complaint as though set forth fully herein.

92. An actual controversy exists between JRS and IMCD and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the Parties and to grant such further and other relief as may be necessary.

93. An actual justiciable controversy exists because the Parties dispute whether "just cause" as defined under Law 75 exists to permit JRS to terminate its oral agreement with IMCD. A judicial determination of this issue is necessary to clarify the rights and obligations of the Parties.

94. "Just cause" under Law 75 is defined in Section 278(d) as "Non-performance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the

principal … in promoting the marketing or distribution of merchandise of services." Definitions, 10 L.P.R.A. § 278

95.     Whether there is "just cause" is a question of fact. *R.W. Int'l Corp.,* 88 F.3d at 51 (1st Cir. 1996).

96.     The principal's own circumstances may also permit unilateral termination for an ongoing dealership for "just cause," irrespective of the dealer's conduct. *Id.* at 52.

97.     JRS has "just cause" to terminate its relationship with IMCD because JRS has failed to perform its essential obligations as a dealer as required under the oral contract and course of dealings.

98.     IMCD created a conflict of interest between itself and JRS and promoted products that compete with JRS's products.

99.     IMCD has failed to generate new business for JRS.

100.     IMCD has not undertaken any meaningful market development activities on JRS's behalf.

101.     IMCD does not hold inventory on JRS's behalf in excess of the product already allocated to rush orders it has placed.

102.     IMCD does not promote JRS's products to customers in Puerto Rico.

WHEREFORE, JRS respectfully requests this Honorable Court to (1) declare JRS has "just cause" as defined under Law 75 10 L.P.R.A. §§ 278 et seq to terminate its oral agreement with IMCD; (2) declare that JRS may lawfully terminate its relationship with IMCD without incurring liability under Law 75; (3) award JRS its costs and reasonably attorneys' fees as permitted by law; and (4) grant such relief as this Court deems just and proper.

14

## <u>REQUEST FOR RELIEF</u>

JRS requests of this Court the following relief:

a.       Declare that IMCD is not a "dealer" within the meaning of Puerto Rico's Law 75, and Law 75 does not apply to the Parties' relationship;

b.       Declare that JRS may directly contact and conduct business with its customers and with distributors without IMCD's involvement or presence, and that such conduct does not violate Law 75;

c.       Declare that JRS has "just cause to terminate its relationship with IMCD and may lawfully terminate its relationship without incurring liability under Law 75;

d.       Award JRS its attorneys' fees and costs in this action, and;

e.       Grant such other relief as the Court deems just, equitable, necessary and proper.

MILLER JOHNSON
**Attorneys for Plaintiff**

Dated:  December 23, 2025

By: /s/ Brandon Tomash
      Brandon Tomash
500 Woodward Avenue, Suite 3600
Detroit, MI  48226
313.672.6950
tomashb@millerjohnson.com

15